Herbert R. SMITH, Plaintiff–Appellant,

v.

Philip PARKER;  Debbie
Wicker Defendants,

and

James Potter;  Ronnie Youngblood;
Herbert Mayfield;  Dot Bacon
Defendants–Appellees.

No. 97–5317.

United States Court of Appeals,
Sixth Circuit.

March 22, 2001.

Before KRUPANSKY, BATCHELDER, and GILMAN, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiff–Appellant Herbert R. Smith has appealed a district court judgment dismissing his civil rights suit filed pursuant to 42 U.S.C. § 1983. Smith initiated the action against James Potter, Ronnie Youngblood, Herbert Mayfield, and Dot Bacon ("Appellees"), all staff members of the Kentucky State Penitentiary,[1] alleging that the prison employees had violated his constitutional rights by interfering with his incoming mail and that this interference was in retaliation for other actions Smith had instituted against prison employees.

On January 18, 1996, the Kentucky State Penitentiary ("KSP") in Eddyville, Kentucky, received a letter without a return address, but addressed to prisoner Herbert R. Smith, containing legal documents for Eddie Dupin, another inmate at KSP. The letter disclosed that Dupin was paying Smith for legal services. This mail was seized and referred to the Internal Affairs Department of the KSP for investigation. Smith was informed of the rejection by a Notice of Rejected Mail signed by Appellee Dot Bacon. The notice informed Smith that the letter was from an "unknown sender" and had been rejected "as unacceptable because of the following reason(s): LEGAL WORK FOR EDDIE DUPIN REJECTED." Smith never saw these documents, as they were destroyed by Bacon on February 21, 1996.

On January 30, 1996, the KSP received a second parcel of mail for Plaintiff–Appellant Herbert Smith, this one listing a sender, Smith's brother Bernard Smith, who is confined in California on charges related to those which resulted in Herbert Smith's confinement. This letter likewise triggered a Notice of Rejected Mail, this time stating Smith had received a parcel containing "Legal work from an inmate at another facility [and which was] rejected. KSP inmates are allowed to assist only other inmates housed at KSP with their legal work." Curiously, this notice went on to note that Smith could have this second mailing returned to him if he paid the forty-five cents by which the postage was deficient.

The next day, January 31, 1996, Smith went to the mail room. Defendant–Appellee Mayfield has testified that he gave Smith the second parcel, while Smith contends that he did not receive the mail.

On February 8, 1996, Smith filed a 42 U.S.C. § 1983 action, to allege that the prison had violated his First Amendment rights and had interfered with *his* right of access to the courts by forbidding him from providing legal work to others.

On March 6, 1997, the district court granted summary judgment to defendants, having concluded that Smith had no standing to assert denial of access to the courts in his brother's court proceeding and Smith had put forth no evidence to demonstrate that his grievances or civil lawsuits played a part in either of the mail rejections, and because the First Amendment allows security restrictions limiting inmate mail. A timely notice of appeal *pro se* was filed on March 13, 1997.

---

1. A litany of other prison employees were also named, but have since been dismissed. Only the four defendants named here are currently before the court.

On August 29, 1997, the Sixth Circuit *sua sponte* ordered the appointment of counsel to represent Smith on appeal. On February 16, 1999, the Court held further proceedings in abeyance pending the outcome of *Thaddeus–X v. Blatter,* 175 F.3d 378 (6th Cir.1999) (*en banc*). On March 8, 1999, a decision was handed down in *Thaddeus–X.* The parties agree that *Thaddeus–X* controls this appeal.

■ In *Thaddeus–X,* the Sixth Circuit resolved that when a prisoner alleges that state officials penalized him for the exercise of a specific constitutional right, the inmate is required to prove the following three elements: (1) the inmate engaged in protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated, at least in part, by the inmate's protected conduct. *See Thaddeus–X,* 175 F.3d at 394. In the instant case, Smith has not proved either that he engaged in protected conduct, or that any adverse action taken against him was motivated by protected conduct.

Smith argues that his legal correspondence, like that in *Thaddeus–X,* is a protected First Amendment right. However, Smith's case is factually distinct from *Thaddeus–X. Thaddeus–X* concerned correspondence between Earnest Bell and Thaddeus–X, inmates at the State Prison of Southern Michigan at Jackson. Bell and X had a "Legal Assistance Request and Agreement," approved by a prison official pursuant to prison policy, stating that X would "help [Bell] with any [and] all legal concerns." *Id.* at 383. After Bell filed a lawsuit against four high-ranking Michigan Department of Corrections Employees, X was ordered to stop giving legal advice to fellow inmates, denied paper and pens, and moved to a segregated area of the prison. *Id.* Prison officials allegedly admitted to Bell that Bell and X were being retaliated against for X's assistance to Bell. While recognizing that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," *id.* at 390, the *en banc* court recognized that Bell and X were acting in accordance with prison regulations, and thus were engaged in protected speech.

■ In the instant case, Herbert Smith was engaged in speech that violated prison regulations. Prison regulations are permitted to abridge inmates' First Amendment rights provided they are "rationally related to a legitimate penological concern." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The first letter apparently contained copies of legal documents for an inmate named Eddie Dupin, and information that Smith was charging fees to perform Dupin's legal assistance. The prison forbids inmates to charge fees for doing legal assistance in order to avoid the difficulty of unpaid legal bills arising between inmates. Smith has not contested that this regulation is "rationally related to a legitimate penological concern." *Id.*

■ The second rejected letter was from Smith's brother Bernard, who was confined at another institution, and also contained legal pleadings. *See Turner,* 482 U.S. at 89 (upholding a ban on all inmate-to-inmate correspondence when inmates are housed in different prisons). Inmates are not permitted to assist inmates at other institutions in order to control the volume of mail which the KSP asserts already floods prison mailrooms. KSP has also asserted that heightened mail volumes increase the chance that a pleading could be lost or misdirected, causing court deadlines to be missed. KSP justifies this regulation by stating that all of Kentucky's prisons have legal aides

trained to assist fellow inmates. Moreover, California-where his brother is housed-is under a duty to provide similar assistance to its inmates. *See Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996). Given *Turner's* precedent, the second correspondence was in violation of a valid prison regulation.[2]

Smith also fails to adduce any evidence that his letters were rejected as a retaliation for having filed grievances and lawsuits. The supervisor of the mailroom operations, as well as the direct mailroom supervisor, testified that they had no knowledge of Smith ever filing any lawsuit against any person. Moreover, even if Smith had evidence of a causal connection, defendants would nevertheless still prevail if they are able to prove that they "would have taken the same action in the absence of the protected activity." *Thaddeus–X,* at 399. Clearly, pursuant to KSP regulations, Smith's prohibited correspondence would have been rejected whether the mailroom clerks knew of Smith's legal actions or not.[3]

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

**2.** Smith contends that he had a protected constitutional right to assist his brother and Dupin with legal work. Otherwise, his brother and Dupin's right of access to the courts would be threatened. Inmates do not possess "an independent right to help others with their legal claims." *Thaddeus–X,* at 395. An inmate's legal work is only protected if his assistance is required to provide another inmate "meaningful access to the courts." *Id.* Smith has submitted no evidence that either his brother or Dupin were not able to pursue

legal redress because of a lack of assistance. "As an example [of the type of evidence necessary], the assisting inmate in *Thaddeus–X* was found to have engaged in protected conduct because the complainant had no knowledge of the law, was being held in administrative segregation, and could only access legal books by requesting them by title." *Herron v. Harrison,* 203 F.3d 410, 416 (6th Cir.2000).

**3.** As Smith's claims are without merit, a qualified immunity inquiry is unnecessary.